Case 06-30483-bjh7 Doc 186 Filed 07/16/07 Entered 07/16/07 14:48:14 Page 1 of 8

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described**.

Signed July 16, 2007     United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AFAMIA, INC., | § | CASE NO. 06-30483-BJH-7 |
| | § | |
| Debtor. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Set Aside Order (the "Motion") filed by Habibba Barodi ("Barodi"). In the Motion (docket no. 165), Barodi, an alleged secured creditor, seeks to set aside an "Order Allowing Bankruptcy Code 506(c) Surcharge and Payment of Certain Allowed Administrative Expenses" (the "Surcharge Order") entered by the Court on May 3, 2007, following a hearing held on April 18, 2007 (the "Hearing"). Robert Milbank, Jr., the Chapter 7 trustee (the "Chapter 7 Trustee") opposes the Motion. The Court has jurisdiction over the Motion, which was heard on June 25, 2007, in accordance with 28 U.S.C. §§ 1334 and 157(b). This Memorandum

Opinion and Order contains the Court's findings of fact and conclusions of law.

I.     **Factual Background**

To put the Motion in context, a brief recitation of the facts underlying the Motion is appropriate. However, while many of the facts stated herein appear of record in the case – *i.e.*, are apparent from a review of the Court's docket, no evidence was offered at the Hearing on the Surcharge Motion, and scant evidence was offered at the hearing on the Motion. However, the Court provides these "facts" from its own review of the record in the case to provide a factual and procedural context for the Court's ruling on the Motion.

On February 6, 2006, Afamia, Inc. ("Afamia" or the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On March 17, 2006, Barodi filed an Emergency Motion for Appointment of Trustee (the "Trustee Motion") (docket no. 24), pursuant to which she requested that a trustee be appointed to administer the Debtor's estate. The Debtor agreed to the appointment of a Chapter 11 trustee and on March 28, 2006, an Order Approving Appointment of Robert Milbank, Jr. As Chapter 11 Trustee was entered (docket no. 33). Thereafter, Milbank began serving as the Chapter 11 trustee for the Debtor's estate (the "Chapter 11 Trustee").

As admitted in the Trustee Motion, the Debtor's sole asset was a shopping center located in Arlington, Texas (the "Shopping Center"), which the Chapter 11 Trustee operated for several months before filing his Motion for Authority to Sell Real Property of Debtor and for Approval of Auction Procedures in Connection Therewith (the "Sale Motion") (docket no. 72). Pursuant to the Sale Motion, the Chapter 11 Trustee sought approval of certain bid procedures for a proposed auction sale of the Shopping Center. No objection was filed to the Sale Motion, and the Court approved the bid procedures by Order entered on August 2, 2006 (docket no. 82), following a noticed hearing on July

25, 2006. The auction was held on the scheduled date, August 17, 2006, and, following an August 21, 2006 hearing at which no party appeared in opposition to the proposed sale, the Court entered an order on August 31, 2006 authorizing the sale of the Shopping Center (the "Sale Order") (docket no. 97) to Triple 9 Sandy Lake, L. P. ("Triple 9") for $2,050,000.

Thereafter, the sale was closed and, in accordance with the Sale Order, certain creditors were apparently paid at the closing of the sale, including (i) those creditors with real property tax liens against the Shopping Center, (ii) First International Bank (the 1st lien creditor), and (iii) Abdulhadi Oliwi ("Oliwi"), who had held a "sweetheart" lease on a portion of the Shopping Center which the Chapter 11 Trustee had sued to avoid as a fraudulent transfer, resulting, after litigation, in a Court approved compromise (by Order entered on August 30, 2006 (docket no. 96) following an August 21, 2006 hearing), pursuant to which Oliwi was authorized to receive a cash payment of $15,000.00 upon the closing of the sale of the Shopping Center in exchange for the termination of the lease.[1] Three other liens asserted against the Shopping Center by Midas Financials, Inc. ("Midas"), Quality 1 Energy Systems, Inc. ("Quality 1"), and Barodi were transferred to the net proceeds to be realized from the sale of the Shopping Center.

On July 7, 2006, shortly after filing the Sale Motion, the Chapter 11 Trustee filed a Motion to Convert to Chapter 7 (the "Conversion Motion") (docket no. 76). In the Conversion Motion, the Chapter 11 Trustee sought a conversion of the case to a case under Chapter 7 of the Bankruptcy Code because the Chapter 11 Trustee anticipated a sale of the Shopping Center and he felt that the net proceeds of the sale could be distributed more efficiently and economically in Chapter 7 than

---

[1] The Court understands that the termination of the Oliwi lease was a condition to the sale of the Shopping Center. In other words, no purchaser was interested in the Shopping Center if it was encumbered by the Oliwi lease.

through a plan process in Chapter 11. Following a hearing held on August 2, 2006, at which no party appeared in opposition to the Conversion Motion, the Court entered an Order granting the Conversion Motion on August 10, 2006 (docket no. 88). Milbank was appointed as the Chapter 7 Trustee following conversion.

On March 22, 2007, the Trustee's Motion and Brief to Allow and Pay Administrative Expenses Under Bankruptcy Code Section 506(c) (the "Surcharge Motion") (docket no. 149) was filed. In the Surcharge Motion, the Chapter 7 Trustee sought to surcharge the remaining secured creditors (Midas, Quality 1, and Barodi) for certain administrative fees and expenses he incurred in operating the Shopping Center and in selling the Shopping Center. The Surcharge Motion was noticed for hearing on April 18, 2007 at 10:30 a.m. (docket no. 150) (previously defined as the "Hearing"). Barodi was served with notice of the Hearing through her counsel, as she had requested in her "Notice of Appearance of Counsel for Habibba Barodi and Request for Copies" filed on March 17, 2006 (docket no. 23).

However, notwithstanding receipt of notice of the Hearing, Barodi did not object to the Surcharge Motion or appear at the Hearing. The two other secured creditors, Midas and Quality 1, filed a Joint Response in Support of Trustee's Motion to Allow and Pay Administrative Claims on April 10, 2007 (docket no. 151), agreeing to the surcharge of the remaining proceeds from the sale of the Shopping Center (and accumulated rents also on hand from the operation of the Shopping Center) and, because the remaining funds in the estate would not be sufficient to pay their secured claims in full,[2] agreeing on a division of the estate funds remaining after the surcharge proposed in

---

[2] Midas filed a proof of claim in the case for $31,798.39 (claim 8 as amended on the Claim Register), attaching the documents supporting the claim. From those documents it is apparent that Midas filed its Abstract of Judgment Lien in Tarrant County on March 22, 2004. Similarly, Quality 1 filed a proof of claim in the case for

the Surcharge Motion between them.

Apparently because Midas and Quality 1 agreed to the relief requested in the Surcharge Motion and Barodi failed to appear or otherwise respond to the Motion, the Trustee did not offer any evidence in support of the Surcharge Motion at the Hearing, relying instead on the agreements reached and the absence of any objection by Barodi (whose lien was being stripped of value by the Surcharge Motion, since there were insufficient funds to pay what appear to be the more senior liens of Midas and Quality 1). On May 3, 2007, the Court entered the Surcharge Order (docket no. 159).

On May 14, 2007, Barodi filed the Motion, seeking, as noted previously, to set aside the Surcharge Order. Barodi did not request a hearing on the motion for several weeks. On May 25, 2007, Barodi gave notice of a June 25, 2007 hearing on the Motion (docket no. 169). Although not apparent from the Motion itself, at the June 25, 2007 hearing, Barodi, in response to the Court's questions, advised that the Motion sought relief under Rule 60(b)(1) of the Federal Rules of Civil Procedure, as applicable here pursuant to Bankruptcy Rule 9024. In short, Barodi contends that a "mistake" was made warranting relief – *i.e.*, that the Court made an error of law in granting the Surcharge Motion. At the hearing on the Motion, counsel for Barodi admitted that he was noticed of the Hearing on the Surcharge Motion. When asked why Barodi failed to appear at the Hearing, he stated: "My office has been without a secretary, and it was a motion that I simply missed. I had been out of town during that period of time. It's not an excuse. I'm not saying 'excusable neglect'

---

$19,240.00 (claim 10 on the Claim Register), attaching the documents supporting the claim. From those documents it is apparent that Quality 1 filed its Mechanic's Lien in Tarrant County on November 25, 2003 for $14,640.00 and that Quality 1 filed its Abstract of Judgment Lien in Tarrant County in the amount of $19,240.00 for its default judgment on its mechanic's lien on July 2, 2004. Barodi also filed a proof of claim in the case for $200,000.00 (claim 17 on the Claim Register), attaching the documents supporting the claim. From those documents it is apparent that Barodi's deed of trust was filed in Tarrant County on November 16, 2004.

**Memorandum Opinion and Order**                                                                                                          **Page 5**

to this Court." Audio tape: hearing conducted 6/25/07 at 9:46:17-9:46:29 a.m. (on file with the Court).

## II. Legal Analysis

As noted by the Fifth Circuit in *Hill v. McDermott, Inc.*, 827 F.2d 1040, 1043 (5th Cir. 1987), Rule 60(b)(1)

> may be invoked for the correction of judicial error, but only to rectify an obvious error of law, apparent on the record. Thus, it may be employed when the judgment obviously conflicts with a clear statutory mandate or when the judicial error involves a fundamental misconception of the law. Moreover, we have frequently allowed Rule 60(b)(1) motions to correct judicial error when the motion was filed within the time for appeal because a Rule 60(b)(1) motion filed within the time for appeal saves the parties and the court the time and expense of a needless appeal.

Here, the Motion was filed within the time to appeal from the Surcharge Order. As noted previously, Barodi did not file any opposition to the Surcharge Motion or otherwise appear at the Hearing on the Surcharge Motion. However, as noted previously, the Chapter 7 Trustee did not introduce any evidence at the Hearing in support of the relief requested in the Surcharge Motion. Rather, counsel for the Chapter 7 Trustee simply reminded the Court of the facts of the case – *i.e.*, the trustee (i) was appointed, (ii) operated the Shopping Center while investigating its value, (iii) employed professionals to assist him in evaluating a possible sale of the Shopping Center, thereby incurring a variety of administrative claims in the case as detailed in the Surcharge Motion, (iv) proposed an auction process to sell the Shopping Center, (v) sued Oliwi to set aside the "sweetheart" lease so the Shopping Center could be sold, (vi) ultimately received Court approval to sell the Shopping Center to Triple 9, (vii) closed the sale of the Shopping Center to Triple 9, and (viii) holds approximately $144,750.25 in cash from the sale of the Shopping Center and from rents received while operating the Shopping Center prior to its sale. However, while many of these "facts" appear

**Memorandum Opinion and Order** **Page 6**

of record from a review of the docket in this case and prior Court Orders, counsel for the Chapter 7 Trustee did not ask the Court to take judicial notice of any matters which appear of record in the Court's file or proffer any testimony in support of the Surcharge Motion. Accordingly, no evidence was presented at the Hearing in support of the Surcharge Motion.

While the Court does not believe that it misconceives the law surrounding the surcharge of a secured creditor in a bankruptcy case and thus does not believe that it committed a "mistake" within the meaning of Rule 60(b)(1) at the Hearing, the absence of evidence supporting the entry of the Surcharge Order is now problematic given the fact that Barodi is seeking relief from the Surcharge Order. Even if the Motion is denied because no error of law was made, Barodi could simply appeal the entry of the Surcharge Order, as the time to appeal has not run, along with her appeal of the denial of the Motion. *See* Bankruptcy Rule 8002(b)(4). While the Court is not convinced that it would be reversed for denying the Motion, it is concerned that the absence of an evidentiary record supporting the entry of the Surcharge Order would be grounds for a reversal of the Surcharge Order on appeal.

Accordingly, the Court will grant the Motion and set the Surcharge Order aside, without prejudice to the Chapter 7 Trustee either resetting the Surcharge Motion for hearing or filing another motion to surcharge. If the Chapter 7 Trustee elects to simply reset the Surcharge Motion for hearing, the Court directs that a supplement to the Surcharge Motion be filed disclosing what the Trustee intends to do with the $20,000 originally proposed to be paid to Global Business Group which the Court has refused to approve. If the Chapter 7 Trustee elects to file another motion to surcharge, the Court expects the motion to include a detailed accounting of what expenses the Trustee proposes to surcharge against the remaining estate funds and how the remainder of those

funds are proposed to be divided among the remaining secured creditors.

For these reasons, the Motion is granted and the Surcharge Order is set aside.

**SO ORDERED**.

### End of Memorandum Opinion and Order ###